Putnam, J.
afterwards drew up the opinion of the Court. The claim of the plaintiffs is for supporting persons committed to the house of correction under the statute of 1787, c. 54, (for suppressing and punishing rogues, vagabonds, common beggars, and other idle, disorderly and lewd persons,) whose lawful settlements were in Westford, and who had no means of supporting themselves.
By St. 1824, c. 28, § 3, it is provided, “ that the city of Boston shall bear and defray all the expenses of the house of correction in Boston, and shall be entitled to the same remedies to recover the charges of maintaining any person therein, that the masters or overseers of the several houses of correction throughout the commonwealth, or that towns or counties are now entitled to by law.”
We must inquire what remedy they had.
By the 4th section of St. 1787, c. 54, it is provided, “that if any person, committed as aforesaid, shall be unable to work, or be weak and sick, or the profits of whose work shall not be sufficient for supporting him or her, then to be comfortably provided for by the master of the same house, who shall be reimbursed the same by the parent, master, town or the government, who are by law obliged to maintain and support such persons when unable to support themselves, as the case may require.”
By St. 1802, c. 22, § 2, the expense is to be certified by the Court of Sessions or their committee, and the master of the house of correction “ shall have a right to demand and recover the same of such person [so committed], his parent. *20 master or kindred, who may he liable by law to maintain him, or- t^e town wherein he is lawfully settled ; and if such person, parent, master, kindred or town, shall refuse or neglect to pay such sum for the space of fourteen days after the same shall have been demanded, in writing, of him or them respectively, or of one of the selectmen of the town, the said.keeper shall have and be entitled to an action of the case to recover such sum against the person so committed, or his parent or master, if any he have, liable by law to maintain him, or against the town in which he is legally settled, in case he has not sufficient estate nor kindred who are able and obliged by .law to maintain him, and may declare therein, in a general indebitatus assumpsit, and recover judgment for such sum as shall be found due to him, with legal interest from the time the same was demanded, and costs.”
The legislature has provided for the punishment of other criminals than those described in the statute for suppressing and punishing rogues and vagabonds, &c. in the house of correction, by confinement to hard labor, or in the common gaol, in the discretion of the court, acpording to St. 1818, c. 123 ; and by the 3d section of that statute the charges are to be reimbursed in the same manner as the expenses of convicts in the state prison ; which, by St. 1811, c. 3, § 5, was by a warrant from the governor, with the advice of the council, upon the treasury of the commonwealth. So it continued until St. 1819, c. 163, whereby the keeper of the house of correction was to have an order from the court upon the county treasury for the supplies to such convict, and the county treasurer was authorized to charge the same to the commonwealth. But that act refers only to convicts sentenced to solitary imprisonment and confinement to hard labor in the common gaol or house of correction, pursuant to St. 1818, c. 123, before cited.
The St. 1797, c. 62, § 3, authorizes the commitment of lunatics to the house of correction, “to be kept at his or her own expense, if he or she have estate ; otherwise, at the charge of the person or town upon whom his maintenance was regularly to be charged, if he or she had not been committed.”
*21 The legislature has taken up the subject of supporting persons committed as rogues, vagabonds, &c. by St. 1826, c. 142, which being prospective in its provisions, and having [1] been passed after the cause of action in the present case accrued, cannot affect the decision. It may be convenient, however, in this connexion to state, that by that statute the party so committed, or his kindred, or the town liable by law for his support, are to pay the charges arising in the house of correction, for supporting such rogues, vagabonds, &c. and in default of such, the charges are to be paid partly by the county, and the rest (not exceeding what is allowed for state paupers) by the commonwealth.
The legislature have thus made a distinction as to the remedy for supporting those convicts in the house of correction who are committed under the act for the suppressing- and punishing of rogues, vagabonds, &c., and those convicted of other offences and punished in the house of correction instead of the common gaol; giving, in the former cases, to the keeper or master a remedy against the party himself, or his kindred or the town which should be by law liable to maintain him, and in the latter cases, against the county in the first instance, but ultimately against the State.
The St. 1822, c. 82, cited by the defendants, prescribes the manner of proceeding upon the accusation of persons for any offences or disorders for which the accused might be liable to be sent to the house of, correction, work-house or house of industry, and gives the accused a right to have the facts settled by a jury. But it does not contain any new provision as to the liability of any person for the support of such convicts. So that the case is to be decided according to the pro visions before cited, in St. 1802, c. 22.
Before an action can be maintained, it should appear that the claim had been properly ascertained or audited and certified, and then, that it had been demanded in writing at least fourteen days before the suit.
Now it does not appear in the case stated, that any demand was made after the supplies were furnished. If it should be taken for granted that the account was just and reasonable, and chat the persons supported had no estate, yet the town where *22 they were settled was not liable to be sued, until after a demand of payment in writing, and a neglect and refusal to pay for the space of fourteen days afterwards.[1]
It is stated that the practice of the keeper of the house of correction was, to give notice to the towns wherein the convicts were lawfully settled, at the times when they were respectively committed, that the expenses would be charged to them. The notices were prospective, and would not supersede the requisitions of the statute touching the liquidation of the account and the demand of payment in writing, and a neglect or refusal of the defendants to pay in fourteen days before the commencement of the action to recover the same. The notices given at the time of the commitments would be unavailing. The defendants could not proceed to remove the persons. They were not kept and supplied as paupers, in distress and standing in need of immediate relief, but as criminals and convicts, to be punished for their offences.[2] The city was bound to furnish them with necessaries while they were so confined, and if it would have the benefit of St. 1802, c. 22, it should pursue the mode therein pointed out to obtain it.
For the reasons above stated, we are of opinion that the plaintiffs must become nonsuit.[3]

 See Boston v. Weston, 22 Pick. 211; Robbins v. Weston, 20 Pick. 112.

 See Wood v. Burlington, 1 Metc. 493.

 See Rev. Stat. c. 143, § 16; Supplement, 1 Metc. 575; Worcester t. Aftl ford, 18 Pick. 381.